**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------x
**MOSHE CANTY,**

                              **Petitioner,**

     **- against -**

**DAVID NAPOLI, Superintendent,**

                              **Respondent.**
---------------------------------------------------------x

**07 CV 1464 (NG) (RML)**


<u>**MEMORANDUM AND ORDER**</u>

**GERSHON, United States District Judge:**

    Moshe Canty, a prisoner incarcerated as a result of a conviction in the New York State Supreme Court, Kings County, through counsel, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner alleges that he is in custody in violation of the Constitution of the United States, and raises a single ground for relief:  that the evidence presented at trial was insufficient to support a conviction for attempted second-degree murder because it did not establish his intent to commit murder.

    **I.**     **Factual Background**

    Taken in the light most favorable to the prosecution, the evidence presented at petitioner's trial established the following facts.[1]  On September 22, 1998, Canty and a co-defendant, Ali Malik, twice entered a small grocery store on Linden Boulevard in Brooklyn, New York.  The store was under constant video surveillance.  The first time, the men's faces were unobscured, and Canty said hello to the store's owner, Gamal Alsaidi.  The men knew each other by name, since Alsaidi had owned the grocery store for some time and had seen Canty around the neighborhood and sold items to Canty in the past.  Canty and Malik, whom Alsaidi also recognized, left the store after about ten seconds.  They returned minutes later, this time

---

[1] Only those facts pertinent to this petition are presented here.

with baseball caps on their heads, bandana-like cloth covering their faces, and each brandishing a silver .44 caliber revolver.  Canty and Malik demanded that Alsaidi and the others present in the store—including Alsaidi's cousin Nasser Saif and Alsaidi's girlfriend Lydia Sierra—raise their hands and give Canty and Malik money.  Alsaidi hesitated and Canty struck him on the head with his gun, after which Alsaidi raised his hands, as did Saif.  After taking $20 from Saif's pocket, Malik shoved Alsaidi down one of the grocery aisles, continuing to demand money at gunpoint.  While Malik was with Alsaidi, Canty stood guard by the front door.  At that time, Canty offered Sierra the opportunity to leave the store, which she refused.

Alsaidi and Malik continued to tussle in the aisle until Alsaidi pulled Malik's mask from his face.  Malik then shoved Alsaidi to the floor and shot him in the abdomen.[2]  After the shot was fired, Malik and Canty together fled from the store. Canty was arrested in Baltimore, Maryland, on October 6, 1998.  At the time of his arrest, police recovered a silver revolver.

Several witnesses—each interviewed by Detectives Joseph Quinn, Thomas O'Donnell, or Thomas Whelan—identified both Canty and Malik as the perpetrators of the robbery.  Alsaidi's girlfriend, Lydia Sierra, who had been present in the store, stated that she knew Canty from the neighborhood—though not by name—and she identified Malik in a computerized photo array the evening of the robbery.  Five days later, Alsaidi, still hospitalized, identified Malik as the person who had shot Alsaidi, in the same computerized photo array.  On October 3, 1998, Alsaidi identified Canty, also by photo array, as one of the robbers.  Lydia Sierra identified Canty, who had recently been arrested, in a lineup at the 75th Precinct on October 8, 1998.  When Malik was arrested, he too was identified in a lineup by Alsaidi, Sierra, and Alsaidi's cousin Nasser Saif.

---

[2] At trial, Alsaidi's surgeon, Dr. Prem Patel, testified that in order to save Alsaidi's life, Patel had to remove Alsaidi's left kidney and part of his pancreas. However, the doctor did not remove the bullet and bullet fragment.  As a result of the surgery, Alsaidi became diabetic and will have to receive insulin treatment for the rest of his life.

## II.     Procedural History

Canty and Malik were each charged with, *inter alia*, attempted murder in the second degree, N.Y. Penal Law §§ 110.00, 125.25; robbery in the first degree, N.Y. Penal Law § 160.15; and criminal possession of a weapon the second degree.  N.Y. Penal Law § 265.03.  Before trial, Justice Lewis Douglass of the Supreme Court, Kings County, held a hearing to consider Malik's and Canty's motions to suppress the various out of court identification procedures and the grocery store's surveillance videos from the day and time of the robbery.  Defendants' motions to suppress were denied, as was Malik's motion for severance.

At the two-week trial, Alsaidi, Saif, and Sierra all testified.  The witnesses consistently identified Malik as the person who shot Alsaidi.  Detectives Quinn, O'Donnell, and Whelan testified about his investigation and the pre- and post-arrest identification procedures.[3]  Canty did not testify.  His mother, Janice Canty, testified that at the time of the robbery she was with her son at the home of Ms. Canty's mother.  Malik's mother and former girlfriend also testified.

At the conclusion of testimony, Canty's counsel moved to dismiss the attempted murder charge against Canty, based on the State's alleged "failure to make out a prima facie case."  (Tr. 715.)  Counsel argued that, even if the State had shown that Canty was present at the scene of the robbery, it had not offered sufficient proof that Canty had the specific intent required for a conviction of attempted second-degree murder.  The State countered that a reasonable jury could infer from the circumstances—that both Malik and Canty carried guns during a robbery, that at least one of those guns was loaded, and that Canty did not express shock or immediately flee after the shooting—that Canty had the requisite intent.  The court denied Canty's motion.

---

[3] The State called several other witnesses, including a detective specializing in firearms analysis and the person in whose Baltimore home Canty was arrested, but their testimony is not relevant to the issues presented here.  Defendant Malik also called additional witnesses.

In charging the jury, the court instructed that, to find Canty guilty of attempted second-degree murder, the jury had to consider both the law governing murder and the law governing attempt. The court explained second-degree murder as requiring proof that "on September 22, in Kings County, the defendants … attempted to cause the death of Gamal Alsaidi, and … the defendants did so with the intent to cause his death." (Tr. 861.) With regard to intent, the court stated that "a person is guilty of an attempt to commit a crime when, with the intent to commit a crime he or she engages in conduct which tends to bring about the commission of the crime." (Tr. 860.) The court continued, "in order to find the defendant guilty of attempted murder … you would have to find that the defendant intended to commit the crime of attempted murder, and that [he] did something to bring about that intent." (*Id.*) The court instructed that Canty could be convicted of attempted second-degree murder even if he had not been the one to shoot Alsaidi, stating that "when one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." (Tr. 859.) The court continued that "any participation, no matter how slight, if it is done knowingly, does make one a participant and responsible for the acts of others." *Id.*

The jury convicted both defendants of attempted murder in the second degree, robbery in the first degree, and criminal possession of a weapon in the second degree. On November 18, 1999, the court sentenced Canty as a two-time felony offender to twenty years of imprisonment for the attempted murder count, ten years for the robbery count, and five years for the weapon possession count, all to run concurrently.

Canty appealed to the Appellate Division, Second Department. On appeal, Canty made several arguments, including that the conviction for attempted second-degree murder was not supported by sufficient evidence of intent. The court affirmed his convictions. *People v. Canty*, 305 A.D.2d 612, 612-13 (2d Dep't 2003). Leave to appeal was denied. *People v. Canty*, 100 N.Y.2d 579 (Table) (2003).

On June 25, 2004, Canty *pro se* moved pursuant to N.Y. C.P.L. § 440.10(1)(h) to vacate his conviction, alleging ineffective assistance of trial counsel. Justice Douglass of the Supreme Court, Kings County, denied the motion on September 27, 2004. Canty *pro se* sought leave to appeal to the Appellate Division, Second Department, which leave was granted on December 6, 2004. Canty then secured counsel for the appeal. On September 26, 2006, the Second Department affirmed the denial of Canty's § 440.10 motion. By letter dated October 31, 2006, Canty, through counsel, sought leave to appeal denial of his § 440.10 motion to the New York Court of Appeals. Leave was denied on December 28, 2006. *People v. Canty*, 7 N.Y.3d 924 (2006).

On April 9, 2007, Canty filed the instant petition in this court.[4]

## III.   Discussion

### A.  Standard of Review

A federal court reviewing a state conviction may not grant a writ of habeas corpus to a state prisoner unless the petitioner's claim was adjudicated on the merits in state court and the state court's determination of the merits (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court," or (2) "resulted in a decision that was based on an unreasonable determination

---

[4] Respondent does not dispute petitioner's statement that he has fully exhausted his claim.

of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The Supreme Court has instructed that "clearly established federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to ... clearly established federal law," if it "contradicts the governing law set forth in [Supreme Court] cases or confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Id.* at 405-06. A decision is "an unreasonable application" of established federal law if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. In other words, "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly," but rather, "that application must be unreasonable." *Id.* at 411. The Court of Appeals for the Second Circuit has refined this standard, holding that "while some increment of incorrectness beyond error" is required, "the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation omitted).

### B. Merits

It is axiomatic that in order to satisfy the requirements of due process, the State in a criminal trial must prove "the existence of every element of the offense" beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315 (1979). However, a reviewing court must ask not

"whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt," but rather "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-19, 324.

Here, a rational trier of fact could conclude that the State had proven beyond a reasonable doubt the "essential elements" of attempted murder in the second degree—(1) intent to cause Alsaidi's death; and (2) engagement in conduct "which tends to effect the commission" of murder. *See* N.Y. Penal Law §§ 110.00, 125.25. The State offered evidence sufficient to provide such a rational basis for the jury's verdict, including that: Canty and Malik together visited Alsaidi's store only minutes before commencing the robbery; both Canty and Malik wore masks and carried guns, at least one of which was loaded; Canty was the first to use violence in the commission of the robbery when Canty hit Alsaidi with his gun; throughout the robbery, Canty stood guard by the door, brandishing his gun; Canty expressed no surprise in response to Malik's shooting of Alsaidi; and after the shooting, Canty and Malik left the store together. These facts were ample under New York law to establish Canty's shared intent with Malik to commit murder. *People v. McDonald*, 257 A.D.2d 695, 696 (3d Dep't 1999). A jury could have inferred that Canty shared Malik's intent to kill Alsaidi if necessary to effectuate the robbery, *Vera v. Hanslmaier*, 928 F. Supp. 278, 284 (S.D.N.Y. 1996), and that Canty's assistance aided in the commission of the crime. While it is true that "[t]he line between mere presence at the scene of a crime, even with knowledge of its commission, and participation sufficient to give rise to accessorial liability is sometimes difficult to discern," *id.*, no such difficulty is presented here. Instead, "the crime[] of which [Canty] was convicted represented 'the culmination of a continuum of events in which he continued to participate after the intentions of his codefendant[]

became manifest, so as to justify the jury's conclusion that he shared [Malik's] criminal intent and aided in commission" of attempted murder in the second degree. *McDonald*, 257 A.D.2d at 696-97.

Therefore, Canty's conviction was neither an unreasonable application of settled federal law nor an unsupportable determination of the facts in light of the evidence presented to the jury. *See* 28 U.S.C. § 2254. His petition for a writ of habeas corpus is DENIED. No certificate of appealability shall issue.

**SO ORDERED.**

_____/s/ *Nina Gershon*_____
**NINA GERSHON**
**United States District Judge**

Dated: April 7, 2010
        Brooklyn, New York